```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| JOSE FREITAS, | : |
| Plaintiff, | : |
| v. | : CASE NO. 3:14CV789(DFM) |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

## RULING ON PENDING MOTIONS

Plaintiff, Jose Freitas, seeks judicial review of the denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] (R. 10-22.)

---

[1] Plaintiff filed an application for DIB on March 8, 2011, and an application for SSI on March 14, 2011. Both applications allege a disability onset date of March 6, 2011. (R. 176-86.) His applications were denied initially and upon reconsideration. (R. 54-101.)

   The ALJ found at step 1 that plaintiff has not engaged in substantial gainful activity since his alleged onset date. (R. 12.)  At step 2, the ALJ found that plaintiff has the following severe impairment: organic mental disorder (status post cerebrovascular accident). (R. 12.)  He found at step 3 that plaintiff's condition did not meet or medically equal a listed impairment. (R. 14.)  He determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that plaintiff is limited to performing unskilled jobs involving simple, routine and repetitive tasks, with short, simple instructions and few workplace changes. (R. 16.)  The ALJ concluded that plaintiff has the attention span to perform simple tasks for two-hour intervals during an eight-hour workday. (R. 16.)  At step 4, the ALJ determined that plaintiff is unable to perform his past relevant work. (R. 20.)  At step 5, considering plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform. (R. 20.)  He thus concluded that

Currently pending are plaintiff's motion to reverse the decision of the Commissioner of Social Security ("Commissioner") (doc. #8) and defendant's motion to affirm the decision of the Commissioner. (Doc. #9.)  On July 31, 2015, pursuant to the court's order, counsel filed a joint stipulation of facts and medical chronology, which I incorporate by reference. (Doc. #13.)  For the following reasons, plaintiff's motion is DENIED and defendant's motion is GRANTED.[2]

I. Legal Standard

The standards for determining an individual's entitlement to DIB and SSI, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the final decision of the Commissioner are well-settled.  I am following those standards, but do not repeat them here.

II. Discussion

Plaintiff makes several arguments.  He contends that the ALJ erred by (a) not finding plaintiff's right-sided weakness to be a severe impairment; (b) failing to consider plaintiff's non-severe impairment in his physical RFC determination; (c) making

---

plaintiff was not disabled within the meaning of the Social Security Act. (R. 21.)  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request for review on April 15, 2014. (R. 1-4.)

[2]This is not a recommended ruling.  On January 6, 2016, the parties consented to the jurisdiction of a magistrate judge. (Doc. #16.)  See 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

2

internal inconsistencies in his mental RFC determination; (d) incorrectly evaluating the medical opinion evidence; (e) failing to support his credibility assessment with substantial evidence; and (f) improperly relying on the testimony of the vocational expert.  I consider each argument in turn.

    A. <u>Step Two Determination</u>

Plaintiff suffered a stroke on March 6, 2011. (R. 279.)  At step 2, the ALJ determined that plaintiff's resulting organic mental disorder is a severe impairment. (R. 12.)  Although the ALJ recognized that plaintiff experienced right-sided weakness after his stroke, he explained that "there is no convincing evidence" that the right-sided weakness caused "more than minimal limitations in terms of [plaintiff's] ability to perform basic work activities," and therefore did not find it to be a severe impairment. (R. 13.)  Plaintiff contends that this finding is erroneous.

A review of the ALJ's assessment of the severity of plaintiff's impairments reveals no error.  The ALJ relied on the medical source statement completed by plaintiff's treating physician, Dr. Evan Schiff, in which he opined that plaintiff's right-sided weakness improved within three months of his stroke and since that time has been no more than "mild."  (R. 13, citing R. 394.)  Dr. Schiff's opinion is consistent with other evidence of record revealing normal physical examination

3

results. For example, in August 2011, consultative examiner Dr. Yacov Kogan observed that plaintiff walked independently with a normal gait. (R. 328-29.) His motor strength and reflexes also were normal. (Id.) Based on his examination, Dr. Kogan opined that plaintiff had no functional limitations. (Id.) In addition to Dr. Kogan's report, the ALJ also considered the opinion of state agency medical consultant Dr. Katherine Tracy, who reviewed the evidence of record and opined that plaintiff does not have a physical impairment resulting in more than minimal functional limitations in his ability to perform basic work activities. (R. 13, citing R. 95.) There is no error here.[3]

### B. Physical RFC Determination

Plaintiff next argues that even if his right-sided weakness is a non-severe impairment, the ALJ erred by not considering the potential functional limitations associated with this impairment when making his RFC assessment. See SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must

---

[3] Even if the ALJ had erred in determining that plaintiff's right-sided weakness is not a severe impairment, any error is harmless because he continued the sequential analysis and considered plaintiff's non-severe impairments when making his RFC determination. See, e.g., Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) ("At step two, the ALJ identified other 'severe impairments' . . . and therefore proceeded with the subsequent steps. And, in those subsequent steps, the ALJ specifically considered [plaintiff's non-severe impairments]. Because these conditions were considered during the subsequent steps, any error was harmless.").

consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Contrary to plaintiff's assertion, the ALJ did consider plaintiff's right-sided weakness, but ultimately found that it did not cause any functional limitations.  He recounted that during plaintiff's interview with state-agency physician Dr. Wendy Underhill, plaintiff "stated that he believed himself capable of working, even while he had some difficulties due to weakness in his right leg . . . .  [T]he claimant reported doing a considerable amount of walking throughout the day, and reported no difficulty handling household chores." (R. 14.)  The ALJ also considered plaintiff's own treating physician's statement that his right-sided weakness improved within three months of his stroke and since that time has been no worse than mild. (R. 13, 18; citing R. 95, 394.)  The ALJ's physical RFC assessment properly accounted for both severe and non-severe impairments and is supported by substantial evidence.

C. Mental RFC Determination

Plaintiff also takes issue with the ALJ's mental RFC determination, arguing that it is internally inconsistent.  The ALJ gave "great weight" to state agency psychologist Dr. Kirk Johnson's opinion that plaintiff has "moderate limitations in terms of the ability to maintain concentration, persistence and pace," but proceeded to find that plaintiff "has the attention

5

span to perform simple work tasks for two-hour intervals throughout an eight-hour workday." (R. 19.) Plaintiff argues that this inconsistency is grounds for remand.

Plaintiff's argument conflates two distinct assessments. "It is well established that a step three determination is not an RFC assessment, but instead is used to rate the severity of mental impairment . . . . Therefore, a determination made at step three need not carry over verbatim to the ultimate RFC determination because the two determinations require their own distinct analysis and conclusion." Race v. Comm'r of Soc. Sec., Docket No. 114CV1357(GTS)(WBC), 2016 WL 3511779, at *3 (N.D.N.Y. May 24, 2016) (citations omitted).

First, at step 3, when considering the severity of plaintiff's organic mental disorder, the ALJ explained:

> [T]he claimant's psychiatric impairment of Organic Mental Disorder does not meet the criteria of section 12.04A or B of 20 CFR Part 404, Subpart P, Appendix 1 . . . . In making this finding, I have considered whether the "Paragraph B" criteria are satisfied. To satisfy the "Paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(R. 15.)

The ALJ determined that plaintiff has not had any episodes of decompensation and has only mild limitations in activities of

daily living and social functioning.  As to deficiencies in concentration, persistence and pace, the ALJ concluded that plaintiff has moderate limitations and "may have problems understanding, remembering and carrying out complex or detailed instructions."  (R. 15.)  The ALJ continued, however, that plaintiff "retains the ability to remember, understand and complete simple, routine and repetitive tasks on a sustained basis . . . [and] remains capable of sustaining concentration and pace for 2-hour intervals and complete assigned simple tasks." (R. 15-16.)

Separate from the step 3 determination is the mental RFC assessment, in which the ALJ considered plaintiff's ability to understand, remember, and carry out instructions.  The ALJ summarized the evidence of record, including plaintiff's own statements and testimony, before concluding that he "is limited to performing unskilled jobs involving simple, routine and repetitive tasks, with short and simple instructions and few workplace changes.  [He] has the attention span to perform simple work tasks for two-hour intervals throughout an eight-hour workday." (R. 19.)  The ALJ's step 3 finding that plaintiff has moderate limitations in concentration, persistence and pace is not inconsistent with his mental RFC determination that plaintiff has the attention span to perform simple work tasks for two-hour intervals throughout an eight-hour workday.

D. <u>Evaluation of Medical Opinion Evidence</u>

Plaintiff next argues that the ALJ did not properly evaluate the medical opinion evidence, specifically, the opinions of his treating physician Dr. Schiff; consultative examiner Dr. Kogan; and state agency document reviewer Dr. Tracy.

1. <u>Dr. Schiff</u>

Plaintiff asserts that the ALJ should have given controlling weight to the opinion of his treating physician, Dr. Schiff. Dr. Schiff wrote a brief letter dated June 12, 2012,[4]

---

[4]Dr. Schiff's June 12, 2012 letter reads in its entirety:

> [Plaintiff] has been my patient since 2009. He has had elevated blood pressure and which he [sic] has been non-compliant with visits and medication administration in the past. He also was a 3-pack per day smoker. He was able to reduce his smoking to 1 pack per day and even quit in 2011, but subsequently has begun smoking again. In March of 2011 (March 6th), the patient developed slurred speech and right upper extremity weakness and was sent to the emergency room. He was found to have suffered a stroke in the left thalamic area of the brain which was confirmed on MRI. At this point he did have some disability. However, over the next three months his speech and R sided strength improved. I have continued to see him here for his blood pressure which has now been well controlled on medication. He has a physical scheduled with me in July. I believe he does still have some speech impediment and R sided weakness, although this is mild and I cannot determine solely if these issues constitute a significant disability or what percent disability this would entail. He had a neurologist Dr. Louis Reik which [sic] he was supposed to follow up with after his stroke. I would suggest getting an opinion from him or another neurologist as to his disability status.

and completed a form medical source statement on March 13, 2013, limiting plaintiff to light work. (R. 395-401.) He also signed a doctor's note on March 20, 2013 stating that plaintiff is unable to lift more than 20 pounds. (R. 402.) Plaintiff argues that the ALJ ignored Dr. Schiff's opinion in violation of the treating physician rule.

Under the treating physician rule, a treating physician's opinion is accorded controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); see Halloran v. Barnhart, 362 F.3d 28, 31–32 (2d Cir. 2004). The ALJ must "give good reasons" for the weight accorded to the treating physician's opinion. See Halloran, 362 F.3d at 32; see also 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Here, the ALJ assigned "little weight" to Dr. Schiff's opinion, explaining that

> the opinion is not supported in the treatment notes, and is not supported in the overall evidence of record. Dr. Schiff provided a brief note simply stating that the claimant is unable to lift more than 20 pounds due to his stroke. However, I find this opinion unpersuasive given the lack of objective findings by Dr. Rosenberg and by Dr. Kogan. Furthermore, Dr. Schiff reported on

---

(R. 394.)

>    June 12, 2012, that the claimant's condition improved
>    significantly within three months of his stroke, and
>    estimated that the residual limitations were "mild."

(R. 19.)

The ALJ considered the supportability of Dr. Schiff's opinion against the record as a whole and provided "good reasons" for his assignment of weight. There is no error.[5]

### 2. Dr. Kogan

Plaintiff argues that the ALJ erred by failing to explicitly state the weight he assigned to the opinion of consultative examiner Dr. Kogan, who made normal physical examination findings and assessed no functional limitations. (R. 328-29.) Plaintiff does not offer any controlling case law to support his argument that an ALJ's failure to assign specific weight to a medical source opinion constitutes reversible error. In any event, the ALJ discussed Dr. Kogan's opinion at length (R. 13, 18-19),[6] and it is clear that he evaluated her opinion in accordance with the regulations.

---

[5] Plaintiff also argues that the ALJ erred by not requesting additional information from Dr. Schiff about plaintiff's 20 pound lifting restriction, or by scheduling a consultative examination to evaluate plaintiff's lifting ability. Where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

[6] The ALJ first summarized Dr. Kogan's "unremarkable" examination findings. (R. 13.) He noted that "[m]otor strength testing was normal, bilaterally. Fine finger movements were

3. <u>Dr. Tracy</u>

Plaintiff next argues that the ALJ erred by giving "great weight" to non-examining state agency document reviewer Dr. Tracy, who wrote that plaintiff "states he has leg pain. He has not been to a doctor, his [physical examination] was normal and he can walk two miles. Pain is not a MDI [medically determinable impairment] and is subjective – no dx to support this allegation." (R. 95.)

The ALJ properly relied on Dr. Tracy's report, which is supported by substantial evidence and is consistent with the other evidence of record, including Dr. Kogan's opinion that plaintiff has no physical functional limitations; Dr. Schiff's

---

normal, bilaterally. Sensory exam was normal in the upper and lower extremities. While the claimant brought a cane to the examination, Dr. Kogan stated that the claimant was able to ambulate independently without the use of his cane, with a normal gait." (R. 13.) In his RFC determination, the ALJ discussed Dr. Kogan's mental examination findings:
> On mental status examination with Dr. Kogan, the claimant denied any history of psychiatric hospitalizations, denied any history of suicidal plans, suicidal attempts, visual hallucinations, and denied any history of auditory hallucinations. He reported normal mood, and denied crying spells. He reported fair sleep and fair appetite. On examination, the claimant was alert and oriented, with normal expressive and receptive language. He was able to recall his date of birth and Social Security number. He was able to register[] three out of three objects, and recall three out of three objects, at 3 minutes. The claimant had a six-digit memory span. His affect was normal. He did not demonstrate pressured speech and his thought processes were organized.

(R. 18.)

11

normal examination findings; and Dr. Schiff's opinion that plaintiff's experienced only "mild" symptoms within three months of his stroke. (R. 328-29, 378, 394.)

### E. Credibility Assessment

Plaintiff's next argument is that the ALJ failed to explain his determination that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

To the contrary, the ALJ explained that the objective medical evidence does not support plaintiff's allegation of substantial functional limitation.  It is apparent from the ALJ's decision that he considered the factors set forth in the regulations and ruling concerning credibility.  See 20 C.F.R. § 404.1529; SSR 96-7P.  For example, the ALJ explained that while plaintiff "alleges inability to walk more than a quarter block," the "medical progress notes . . . show that the claimant's physical exam revealed an individual in no acute distress, that was well nourished and well developed . . . .  His musculoskeletal exam revealed normal strength, without any apparent joint abnormalities." (R. 18.)  The ALJ also considered plaintiff's ability to perform activities of daily living with little restriction.  In this regard, he is able to independently care for his personal hygiene, perform household chores, shop

for food and clothes, prepare simple meals, take short walks, and use public transportation. (R. 15, 40, 214, 217.)

The ALJ's credibility assessment is thorough and supported by substantial evidence. The court will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling." Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010).

### F. Vocational Expert's Testimony

Finally, plaintiff argues that at step 5, the Commissioner failed to meet her burden of proof[7] that although plaintiff is unable to perform his past relevant work, he retains the RFC to perform other work. Plaintiff's argument concerns the ALJ's reliance on vocational expert's testimony.

The vocational expert testified that plaintiff could perform the following jobs: hand packager, production worker, and production inspector. (R. 21.) All three have a reasoning development level of 2, which, according to the Dictionary of Occupational Titles ("DOT"), requires the application of "common sense understanding to carry out detailed but uninvolved written or oral instructions." Plaintiff asserts that the ALJ limited

---

[7]The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof at the fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

13

him to reasoning level 1 jobs[8] by virtue of his RFC restriction to "short and simple instructions," (R. 16) and that he erred by accepting the vocational expert's testimony that plaintiff could perform reasoning level 2 jobs.

Judges in this district have held that limitations to "short, simple instructions" are not inconsistent with reasoning development level 2. Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 408 (D. Conn. 2012) (explaining that "[a] number of courts have found that a limitation of simple tasks or instructions is consistent with . . . level 2 reasoning"); see also Soler v. Colvin, Docket No. 3:13-CV-1659 (WIG), 2015 WL 4999907, at *14 (D. Conn. Mar. 3, 2015) ("A limitation to work with simple instructions is consistent with jobs in reasoning levels 1 *and* 2."); Lofton v. Colvin, Docket No. 3:13-CV-528 (JBA), 2015 WL 2367692, at *27 (D. Conn. May 13, 2015) ("[A] restriction of simple tasks or instructions is consistent with both Reasoning Level Two and Three positions."). The Commissioner has met her burden of proof at step 5.

---

[8]The DOT describes reasoning level 1 as requiring the application of "commonsense understanding to carry out simple one or two-stop instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."

III. Conclusion

For these reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #8) is DENIED and defendant's motion to affirm the decision of the Commissioner (doc. #9) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  See 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED at Hartford, Connecticut this 22nd day of December, 2016.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge